Chief Judge KOZINSKI delivered the opinion of the court, which is joined in full *1081 by Judges SILVERMAN, GRABER, TALLMAN, CLIFTON and NGUYEN. Judge BYBEE joins Part II.B.
OPINION
KOZINSKI, Chief Judge:
We consider whether prison officials sued for money damages under 42 U.S.C. § 1983 may raise a lack of available resources as a defense.
I. Background
At the time Cion Adonis Peralta arrived at California State Prison, Los Angeles County (Lancaster), the prison had only three or four dentists and three or four dental assistants. It had no office technicians or dental hygienists. State policy calls for one dentist for every 950 prisoners, but the ratio at Lancaster was closer to one to 1,500. In addition, the dentists there were responsible for roughly 1,800 inmates at other facilities, bringing the ratio to around one to 2,000.
Peralta requested dental care almost immediately. He complained that his teeth hurt, he had cavities and his gums were bleeding. When he hadn’t received care a few weeks after his initial request, Peralta filed a written appeal, in which he again claimed that he had cavities and severe pain. In the informal response to that appeal, Peralta was put on a waiting list, which was generally nine to twelve months long.
Peralta then pursued a formal appeal. He was subsequently interviewed by Dr. Brooks, a staff dentist. Brooks asked Per-alta which tooth hurt most, took X-rays and scheduled Peralta for an extraction of that tooth. Brooks also gave Peralta a few days’ supply of Ibuprofen. Dissatisfied, Peralta filed a second-level appeal a few days later, and was told that “further treatment [would] be provided based on the waiting list.”
About three months after his initial interview, Peralta had his second visit with Brooks. During that visit, Peralta was supposed to have the scheduled extraction, but he declined to go through with it after Brooks told him removal was unnecessary. Brooks gave Peralta more Ibuprofen and medication for an infection. Eleven months after that, Brooks saw Peralta again and took X-rays, reviewed Peralta’s history and cleaned his teeth.
After Peralta declined to have his tooth extracted, but before his cleaning, he filed this section 1983 lawsuit for money damages against Brooks; the prison’s Chief Dental Officer, Dr. Dillard; and the Chief Medical Officer, Dr. Fitter. He claimed that their deliberate indifference to his serious medical needs violated his Eighth Amendment rights. See 42 U.S.C. § 1983. In the end, his claims amounted to a several-month delay in getting his teeth cleaned and an alleged failure to treat his pain. These claims went to trial, but after Peral-ta presented his case, the district court granted directed verdicts to Dillard and Fitter. The jury found for Brooks. Peral-ta challenges the jury instruction, as well as the judgment in favor of Dillard and Fitter.
II. Discussion
Prison officials violate the Eighth Amendment if they are “deliberate[ly] indifferent] to [a prisoner’s] serious medical needs.” Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A medical need is serious if failure to treat it will result in “ ‘significant injury or the unnecessary and wanton infliction of pain.’ ” Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.2006) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), overruled on other grounds by WMX *1082 Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.1997) (en banc)). A prison official is deliberately indifferent to that need if he “knows of and disregards an excessive risk to inmate health.” Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
A. “Cost Defense” Jury Instruction
The court instructed the jury that “[wjhether a dentist or doctor met his duties to Plaintiff Peralta under the Eighth Amendment must be considered in the context of the personnel, financial, and other resources available to him or her or which he or she could reasonably obtain.” The court also told the jury that “[a] doctor or dentist is not responsible for services which he or she could not render or cause to be rendered because the necessary personnel, financial, and other resources were not available ... or which he or she could not reasonably obtain.”
We review a district court’s formulation of civil jury instructions for abuse of discretion, Dang v. Cross, 422 F.3d 800, 804 (9th Cir.2005), but we review de novo whether an instruction states the law correctly, Clem v. Lomeli, 566 F.3d 1177, 1180-81 (9th Cir.2009). Jury instructions must be supported by the evidence, fairly and adequately cover the issues presented, correctly state the law, and not be misleading. Id. at 1181.
1. The Instruction’s Statement of the Law
The Supreme Court has not said whether juries and judges may consider a lack of resources as a defense in section 1983 actions. See Wilson v. Seiter, 501 U.S. 294, 302, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (“[T]he validity of a ‘cost’ defense as negating the requisite intent is not at issue in this case....”); see also Harris v. Angelina Cnty., 31 F.3d 331, 336 (5th Cir.1994). But the Court has told us that prison officials aren’t deliberately indifferent to a prisoner’s medical needs unless they act wantonly, see Estelle, 429 U.S. at 104, 97 S.Ct. 285, and whether an official’s conduct “can be characterized as ‘wanton’ depends upon the constraints facing [him],” Wilson, 501 U.S. at 303, 111 S.Ct. 2321. The Court has also told us that, even if an official knows of a substantial risk, he’s not liable “if [he] responded reasonably.” Farmer, 511 U.S. at 844, 114 S.Ct. 1970.
What is reasonable depends on the circumstances, which normally constrain what actions a state official can take. This case is a fine example. Peralta rests his claim on having to wait for dental care, but prisons are a particularly difficult place to provide such care. Security concerns dictate that only one prisoner be in the examination room at a time, even if there’s more than one chair, and that no prisoner be left alone, lest he try to use dental tools as weapons. Further exacerbating the problem, only emergency cases can be seen when the prison is in lockdown, and dentists can’t accept prisoners’ complaints at face value, as inmates often try to jump the line by exaggerating their symptoms.
These challenges aside, there simply weren’t enough dentists at Lancaster to provide every prisoner with dental care on demand. The ratio of dentists to prisoners was less than half what the state said it should be, there were no office technicians or dental hygienists and, on many occasions, Brooks had no dental assistant. Peralta doesn’t argue that Brooks was responsible for these constraints. Nor could he, since Brooks had no control over the budget.
Peralta would have had the jury ignore that there was no money or staff available to treat him immediately, and hold Brooks *1083 personally liable for failing to give Peralta care that Brooks would have found impossible to provide. Peralta claims that this approach is compelled by our decisions in Jones v. Johnson, 781 F.2d 769 (9th Cir.1986), and Snow v. McDaniel, 681 F.3d 978 (9th Cir.2012). In Jones, we reversed a district court’s dismissal of a pretrial detainee’s deliberate indifference claims because we found “no other explanation in the record than the budget concerns” for denying treatment, and “[budgetary constraints ... do not justify cruel and unusual punishment.” 781 F.2d at 771. In Snow, we reversed a district court’s grant of summary judgment in favor of prison officials who delayed an inmate’s surgery, partially due to a lack of resources, because the desire to avoid paying for a surgery is an “improper motive[ ]” for delaying it. 681 F.3d at 987.
As an en banc court, we’re not bound by either decision. Even if we were, it wouldn’t help Peralta. In Jones and Snow, plaintiffs sought both money damages and injunctions. Neither case dealt with jury instructions; the question in both was whether the case could proceed at all.
Lack of resources is not a defense to a claim for prospective relief because prison officials may be compelled to expand the pool of existing resources in order to remedy continuing Eighth Amendment violations. See LaMarca v. Turner, 995 F.2d 1526, 1536-39, 1542 (11th Cir.1993) (prison official wouldn’t be personally liable if he did everything he could, but prisoner could get an injunction against official in his official capacity); see also Watson v. City of Memphis, 373 U.S. 526, 537, 83 S.Ct. 1314, 10 L.Ed.2d 529 (1963) (rejecting argument that city couldn’t desegregate parks because of budgetary concerns); Wright v. Rushen, 642 F.2d 1129, 1134 (9th Cir.1981) (“[C]osts cannot be permitted to stand in the way of eliminating conditions below Eighth Amendment standards.”). A case seeking prospective relief thus can’t be dismissed simply because there is a shortage of resources.
Damages are, by contrast, entirely retrospective. They provide redress for something officials could have done but did not. What resources were available is highly relevant because they define the spectrum of choices that officials had at their disposal. To the extent Jones and Snow can be read to apply to monetary damages against an official who lacks authority over budgeting decisions, they are overruled. Judge Christen claims we are also overruling Spain v. Procunier, 600 F.2d 189 (9th Cir.1979), but this is plainly not so. Spain involved only injunctive relief; it has nothing to say about damages, much less, jury instructions. See id. at 192.
Peralta seeks only damages. Allowing the jury to consider the constraints under which an individual doctor operates in determining whether he is liable for money damages because he was deliberately indifferent doesn’t mean that prisoners have no remedy for violations of their Eighth Amendment rights. For example, although prisoners can’t sue states for monetary relief, they can sue for injunctions to correct unconstitutional prison conditions. See Will v. Mich. Dep’t of State Police, 491 U.S. 58, 71 & n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); see also Brown v. Plata, — U.S. —, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011).
Section 1983 also authorizes prisoners to sue municipal entities for damages if the enforcement of a municipal policy or practice, or the decision of a final municipal policymaker, caused the Eighth Amendment violation. See City of St. Louis v. Praprotnik, 485 U.S. 112, 138, 108 *1084 S.Ct. 915, 99 L.Ed.2d 107 (1988); Pembaur v. City of Cincinnati 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); Monell v. Dep’t of Soc. Servs., 486 U.S. 658, 668 & n. 7, 685-86, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A chronic shortage of resources may well amount to a policy or practice for which monetary relief may be available under Monell, but Monell claims can’t be brought against states, which are protected by the Eleventh Amendment. See, e.g., Quern v. Jordan, 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). The prison where Peralta was held was, of course, run by the state.
Our dissenting colleagues would have the jury hold Brooks liable for delay in treatment caused by shortages beyond his control, on the theory that the state will wind up paying any damages award. According to the dissenters, this will give the state an incentive to improve prison conditions. Christen Dissent 1092-93; Hurwitz Dissent 1100-01. But the state is protected from monetary damages by the Eleventh Amendment. We may not circumvent this protection by imputing the state’s wrongdoing to an employee who himself has committed no wrong. The dissenters attempt an end run around the Eleventh Amendment by subjecting the state to precisely the kind of economic pressure against which the amendment protects it.
We have no quarrel with the dissenters’ view that Peralta may have suffered an Eighth Amendment violation. If the state provided insufficient resources to accord inmates adequate medical care, it could be compelled to correct those conditions. See Plata, 131 S.Ct. 1910; Spain, 600 F.2d 189. But such a lawsuit could provide no redress for past constitutional violations because the state is protected by sovereign immunity, “a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.” Alden v. Maine, 527 U.S. 706, 713, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999). Congress could abrogate this immunity, but it has not done so for cases brought under 42 U.S.C. § 1983. See Quern, 440 U.S. at 345, 99 S.Ct. 1139. We decline to bring about by indirection what Congress has chosen not to do expressly.
An “intent requirement is either implicit in the word ‘punishment’ or is not; it cannot be alternately required and ignored as policy considerations might dictate.” Wilson, 501 U.S. at 301-02, 111 S.Ct. 2321. The Supreme Court has told us that it is. A prison medical official who fails to provide needed treatment because he lacks the necessary resources can hardly be said to have intended to punish the inmate. The challenged instruction properly advised the jury to consider the resources Brooks had available in determining whether he was deliberately indifferent.
2. The Evidence Supporting the Jury Instruction
Peralta also argues that the jury instruction shouldn’t have been given, even if it was correct, because there was no evidence that budgetary constraints actually affected his treatment. Even if Peralta’s argument had merit, we would reject it because he invited the error. See United States v. Perez, 116 F.3d 840, 845 (9th Cir.1997) (en banc). Peralta himself first suggested that the evidence introduced at trial supported an instruction about budgetary constraints. He proposed an instruction that stated, as did the final instruction, that “[e]vidence has been presented during the trial regarding dental staffing levels and the availability of resources at the Lancaster correctional facility where Plaintiff Peral-ta was incarcerated during the time of his *1085 alleged injuries,” but his instruction would have required the jury not to consider it. Peralta’s proposed instruction presupposed that there was sufficient evidence about the lack of resources at Brooks’s disposal. He can’t now turn around and challenge the instruction containing some of the very text he proposed, on the new theory that it’s unsupported by the evidence.
In any event, there’s plenty of evidence to support a finding that a lack of resources prevented Brooks from cleaning Peralta’s teeth sooner. For example, in the Inmate Appeal Response, Brooks listed “staffing shortages beyond our control” as an explanation for the “waiting list for dental procedures.” There was also evidence that the prison had less than half the number of dentists’ required by law, there were no dental hygienists and dentists frequently had to work without dental assistants.
Peralta argues that there’s no proof connecting the staff shortages to his lack of care. But Brooks testified that he focused on a prisoner’s most pressing complaint because he didn’t have enough time, and Fitter testified that staff shortages limited the amount of time Brooks could have spent with Peralta during any visit. Peral-ta argues that Brooks could at least have put him on the emergency list, but the decision whether to put an inmate on the emergency list calls for a balancing of the inmate’s needs against the available resources and the needs of other patients. Because resources were limited, putting Peralta on the emergency list would have delayed another prisoner’s treatment.- It was up to the jury to decide whether Brooks was deliberately indifferent by failing to put Peralta on the emergency list, given “the personnel, financial, and other resources available to him ... or which he ... could reasonably obtain.”
Peralta also argues that Brooks had the resources to prescribe him additional (or different) pain medication. But Brooks did prescribe Ibuprofen, and Peralta testified that it helped alleviate his pain. There’s no evidence that Peralta requested further medication, although other inmates did so routinely, until months later when he next. met with Brooks. During this second visit, Brooks gave Peralta more Ibuprofen and medicine to treat an infection. Brooks testified that he didn’t see any signs of an infection during Peralta’s first visit. The jury had sufficient evidence on which to base a finding that a lack of resources caused any delay in providing dental.care. It would have been surprising if the jury had concluded otherwise.
B. Judgment as a Matter of Law
Peralta also challenges the district court’s decision to grant Fitter, the Chief Medical Officer, and Dillard, the Chief Dental Officer, judgment as a matter of law. See Fed.R.Civ.P. 50(a). Judgment as a matter of law is warranted “ ‘when the evidence presented at trial permits only one reasonable conclusion.’ ” Torres v. City of Los Angeles, 548 F.3d 1197, 1205 (9th Cir.2008) (quoting Santos v. Gates, 287 F.3d 846, 851 (9th Cir.2002)). We review de novo the district court’s decision to grant judgment as a matter of law, drawing all reasonable inferences in favor of Peralta. Id. at 1205-06.
Supervisors aren’t vicariously liable for constitutional violations under section 1983. Hunt v. Dental Dep’t, 865 F.2d 198, 200 (9th Cir.1989). But they can be liable for their own conduct. Redman v. Cnty. of San Diego, 942 F.2d 1435, 1445-46 (9th Cir.1991) (en banc), abrogated on other grounds by Farmer, 511 U.S. 825, 114 S.Ct. 1970. Consequently, a prison administrator can be liable for deliberate *1086 indifference to a prisoner’s medical needs if he “knowingly fail[s] to respond to an inmate’s requests for help.” Jett, 439 F.3d at 1098.
1. Serious medical need
A medical need is serious if “failure to treat a prisoner’s condition could result in further significant injury or the unnecessary and wanton infliction of pain.” Id. at 1096 (internal quotation marks omitted). Peralta’s claim arises primarily out of the delay in cleaning his teeth. The mere failure to provide a routine tooth cleaning doesn’t create a serious medical need. Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir.2002). The Eighth Amendment “ ‘requires neither that prisons be comfortable nor that they provide every amenity that one might find desirable.’ ” Id. at 745 (quoting Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir.1982)).
But Peralta alleges that he was denied more than a routine cleaning. He alleges that he had severe pain, infected teeth, cavities and bleeding gums, and that a cleaning was necessary to treat those medical conditions. We’ve held that the “existence of chronic and substantial pain” indicates that a prisoner’s medical needs are serious, McGuckin, 974 F.2d at 1060, and recognized that a delay as short as three months in receiving necessary dental care can create a genuine issue of material fact, Hunt, 865 F.2d at 200-01. Defendants haven’t challenged these precedents, nor disputed before us that Peralta has adequately alleged a serious medical need. We thus assume, without deciding, that this is so.
2. Fitter’s Subjective Intent
As the Chief Medical Officer, Fitter was required to — and did — sign Peralta’s second-level appeal. The case against Fitter rests entirely on this signature. But the fact that Fitter signed the form doesn’t mean that he knew about Peralta’s complaints. To be liable, “the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” Farmer, 511 U.S. at 837, 114 S.Ct. 1970. Even if a prison official should have been aware of the risk, if he “was not, then [he] has not violated the Eighth Amendment, no matter how severe the risk.” Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1188 (9th Cir.2002).
Peralta hasn’t shown that Fitter should have been aware of any risk to Peralta’s health, let alone that Fitter actually was aware. Although he supervised the dental department, Fitter isn’t a dentist, and he didn’t independently review Peralta’s claims or read his chart before signing off on the second-level appeal. Instead, he relied on the medical opinions of the staff dentists who had investigated Peralta’s complaints and already signed off on the treatment plan.
Fitter understood his role to be largely administrative, ensuring that the proper personnel had signed off on a reasonable course of treatment, not second guessing staff dentists’ medical judgments. And how could he have? Even if he had looked at Peralta’s chart, he wouldn’t have been able to tell whether Peralta had a serious medical need and what the best course of treatment was. See Johnson v. Doughty, 433 F.3d 1001, 1011 (7th Cir.2006); Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir.2002).
Peralta argues that a reasonable jury could nevertheless “conclude that by signing off on dental second-level appeals and placing inmates back on the extensive waiting list without reviewing their records ... Fitter was ... deliberately indifferent to the serious risk posed by his actions to *1087 inmates in Mr. Peralta’s position.” (emphasis added); see Redman, 942 F.2d at 1446. But Fitter’s decision to sign appeals that he knew had already been reviewed by at least two qualified dentists, when he had no expertise to contribute to that review, isn’t a wanton infliction of unnecessary pain. See Estelle, 429 U.S. at 104, 97 S.Ct. 285.
3. Dillard’s Subjective Intent
Unlike Fitter, Dillard is a dentist. Although he was required to sign Peralta’s second-level appeal, he didn’t. Instead, the appeal was signed by Dr. Cassim, a staff medical doctor. Dillard didn’t review Peralta’s medical records or meet with him prior to the filing of the lawsuit. Dillard testified that he would authorize someone else to sign the second-level responses on his behalf when he knew he would be absent from the prison because appeals had to be processed quickly. As there’s no evidence that Dillard participated in Peral-ta’s treatment, Peralta hasn’t proven that Dillard was aware of Peralta’s complaints.
Peralta argues that the lawsuit itself put Dillard on notice, but he cites no cases holding that the mere filing of a lawsuit can create independent liability under section 1983. Section 1983 complaints often allege numerous violations, many of which turn out not to be supported by the evidence. It would be unfair to make section 1983 defendants liable merely for failing to sift through what are often rambling and incoherent pro se complaints to determine the truth of each allegation, even before discovery has begun.
Peralta also argues that Dillard was deliberately indifferent to the suffering of prisoners in Peralta’s position by having a non-dentist'sign inmate appeals and failing to read them himself. To find for Peralta, a jury would have had to conclude that Dillard’s behavior wasn’t merely negligent, but wanton. See Estelle, 429 U.S. at 104, 97 S.Ct. 285. At most, Peralta has shown that Dillard failed to follow required procedures. But Dillard’s failure to follow such procedures isn’t, of itself, enough to establish a violation of Peralta’s constitutional rights. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir.2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.1988) (order). Peralta must prove both (1) that the failure to follow procedure put inmates at risk and (2) that Dillard actually knew that his actions put inmates at risk. See Gibson, 290 F.3d at 1188. There wasn’t enough evidence for any reasonable juror to draw that conclusion.
Like Fitter, Dillard understood his role to be administrative. He didn’t think that the Chief Dental Officer was required to interview prisoners or review medical records, or that he should second-guess staff dentists’ diagnoses. Dillard knew that first-level appeals were signed by two staff dentists, in this case Drs. Kumar and Brooks, and that another doctor would have reviewed the appeal in his place to make sure all of the proper procedures were followed. Perhaps Dillard should have known that his actions put prisoners at risk. But, “[i]f a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk.” Id. Because Peralta hasn’t shown that Dillard had actual knowledge, judgment as a matter of law was appropriate.
In any event, any error was harmless. See Goulet v. New Penn Motor Express, Inc., 512 F.3d 34, 42-43 (1st Cir.2008). Despite Peralta’s assertions to the" contrary, there’s no way that the jury could have found that Dillard and Fitter were liable after finding that Brooks was not. See supra pp. 1083-85; cf. Corales v. Bennett, 567 F.3d 554, 570 (9th Cir.2009); *1088 Jackson v. City of Bremerton, 268 F.3d 646, 653-54 (9th Cir.2001). Peralta hasn’t pointed to anything that Fitter or Dillard could have done that Brooks couldn’t. Like Brooks, Fitter and Dillard had no control over the budget. Not only did they have no say over how much money was allocated to the prison, but they couldn’t take money allocated for one purpose and use it for another. They had no input into the prison’s funding levels or even how many dental positions the prison would have. Because the case against Dillard and Fitter was identical to that against Brooks, by finding Brooks not liable, the jury essentially resolved the question of Dillard’s and Fitter’s liability as well.
4. Law of the Case
Finally, Peralta argues that the law of the case doctrine precluded the district court from granting Fitter and Dillard judgment as a matter of law because it had previously refused to grant them summary judgment. But the denial of a summary judgment motion is never law of the case because factual development of the case is still ongoing. Denial of summary judgment may result from a factual dispute at the time. That dispute may disappear as the record develops. See Shouse v. Ljunggren, 792 F.2d 902, 904 (9th Cir.1986) (citing Preaseau v. Prudential Ins. Co. of Am., 591 F.2d 74, 79-80 (9th Cir.1979)).
Peralta points to a passage in Federal Insurance Co. v. Scarsella Bros., 931 F.2d 599 (9th Cir.1991), indicating that we overstated the rule when we said in Shouse that “the law of the case doctrine does not apply to pretrial rulings.” Id. at 601 n. 4 (internal quotation marks omitted). According to Scarsella Bros., pretrial rulings can create binding law of the case if the court “clearly intended to decide the issues at hand.” Id.
To the extent that Scarsella Bros. purported to hold that the law of the case doctrine bars district courts from reconsidering pretrial rulings, we overrule it. Pretrial rulings, often based on incomplete information, don’t bind district judges for the remainder of the case. Given the nature of such motions, it could not be otherwise. At the summary judgment stage, for example, trial courts ask only whether there could be a material issue of fact. They must draw all inferences in the non-movant’s favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and rest their rulings on the evidence that they think could be introduced at trial. But when considering whether to grant judgment as a matter of law, they look only at the evidence actually introduced at trial.
It makes no sense to say that a ruling that the plaintiff could hypothetically prove some set of facts that would support his claim prevents a district court from later finding that the plaintiff had not, in fact, proven those facts. Nor to say that if a district court realizes an earlier ruling was mistaken, it can’t correct it, but must instead wait to be reversed on appeal. All that would do is waste both the courts’ and litigants’ time and resources. Thus, Wright and Miller have observed that, although “[i]t is proper [for a district judge] to refuse to reconsider a summary judgment ruling!,] • • • Menial of summary judgment often is reconsidered.” 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478.1 (2002). “Denial can easily be followed,” as it was here, “by judgment as a matter of law or dismissal after trial.” Id.
Peralta’s case illustrates the point. The evidence introduced at trial went beyond *1089 that presented in the motion for summary judgment. See Old Person v. Brown, 312 F.3d 1036, 1039 (9th Cir.2002). Dillard and Fitter moved for summary judgment on the grounds that (1) Peralta hadn’t presented expert evidence and (2) Dillard and Fitter weren’t personally involved in Peralta’s care. The district court found that the lack of an expert alone wasn’t enough to entitle Fitter and Dillard to summary judgment, and that there were material questions of fact as to whether Peralta had a serious medical need, what kind of care Peralta received at the prison and when Fitter and Dillard became aware of Peralta’s complaints. The court noted, for example, that “[wjhether or not Dillard personally signed the Second Level Appeal, authorized someone else to sign on his behalf, or was wholly unaware of the document is a question of fact.” But after Peralta had presented his case, the court found that there was no evidence that either doctor knew about Peralta’s alleged condition. Therefore, the district court didn’t abuse its discretion in granting Dillard and Fitter judgment as a matter of law. See Milgard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 714-15 (9th Cir.1990).
AFFIRMED.