**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 19 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FOY JAMES CHANDLER, | No. 17-56402 |
| Plaintiff-Appellee, | D.C. No. 5:14-cv-01169-JGB-KES |
| v. | |
| R. PHILLIP GUTTIERREZ; et al., | MEMORANDUM[*] |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Central District of California
Jesus G. Bernal, District Judge, Presiding

Argued and Submitted March 4, 2019
Pasadena, California

Before: WARDLAW and BENNETT, Circuit Judges, and SESSIONS,[**] District Judge.

Foy James Chandler brought this action against various prison administrators at the Federal Correctional Institute ("FCI") Victorville over Eighth Amendment violations he alleges he suffered while incarcerated at FCI Victorville.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable William K. Sessions III, United States District Judge for the District of Vermont, sitting by designation.

Defendants filed a motion for summary judgment in district court on the grounds of qualified immunity. The district court denied the motion. We affirm in part and reverse in part.

As an initial matter, we address Chandler's argument that this Court does not have jurisdiction to review this appeal because Appellants dispute Chandler's version of the facts. This Court's interlocutory appellate jurisdiction under 28 U.S.C. § 1291 to review the denial of qualified immunity is limited to questions of law. Appellants' brief acknowledges that the facts must be construed in the light most favorable to Chandler, but at times contests his facts. However, as clarified at argument, Appellants are presenting a legal argument that they are entitled to qualified immunity as a matter of law even assuming Chandler's version of the facts. Although the district court found that there are disputed issues of material fact, this Court has jurisdiction, "construing the facts and drawing all inferences in favor of [Chandler], to decide whether the evidence demonstrates a violation" of his Eighth Amendment rights. *Pauluk v. Savage*, 836 F.3d 1117, 1121 (9th Cir. 2016).

We affirm the district court's determination that Appellants Dr. Ross Quinn, Physician Assistant ("PA") Antonia Rogers, and Nurse Lourdes Singh are not entitled to qualified immunity. Chandler has alleged that Dr. Quinn and PA Rogers consistently ignored his complaints and symptoms of serious pain because they

found Chandler's requests for medical attention bothersome and they wished to reduce their workload. According to Chandler, Dr. Quinn and PA Rogers falsely recorded his symptoms to paint him as a malingering drug addict, even though Chandler passed multiple drug tests. This included dishonestly recording a fresh needle mark on Chandler's arm, and, in the case of Dr. Quinn, telling Chandler's father that Chandler was a drug addict and telling Chandler that he would not be getting further treatment because Chandler had filed a grievance against him. Additionally, Chandler adduces facts that show that on at least four occasions, Nurse Singh either refused to see Chandler in his cell or came to Chandler's cell and offered no treatment, although she was aware of Chandler's serious condition.

These allegations amount to a violation of Chandler's clearly established Eighth Amendment rights. Viewing the facts in the light most favorable to Chandler, a reasonable juror could find that Dr. Quinn, PA Rogers, and Nurse Singh were deliberately indifferent to Chandler's serious medical needs. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (holding that interfering with medical treatment "not because of an honest medical judgment, but on account of personal animosity" can constitute deliberate indifference). Dr. Quinn, PA Rogers, and Nurse Singh are not entitled to qualified immunity at this stage of the proceedings.

We also affirm the district court's determination that Warden Guttierrez is not entitled to qualified immunity. Chandler alleges that Warden Guttierrez was told of Chandler's condition on at least two occasions and was informed that Chandler had at one point missed five meals in a row, was unable to leave his cell to eat or get medical treatment, and had not received adequate medical attention. According to Chandler, Warden Guttierrez did nothing to remedy these concerns. Viewing the facts in the light most favorable to Chandler, a reasonable jury could find that Warden Guttierrez's failure to respond to Chandler's request for medical help when faced with information that he was not receiving medical attention constituted deliberate indifference. *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) (finding that the warden's failure to respond to the prisoner's letter detailing medical staff's inadequate treatment was sufficient to raise a triable issue of fact regarding whether the warden was deliberately indifferent).

We reverse the district court's finding that Assistant Health Services Administrator ("AHSA") Sterling is not entitled to qualified immunity. Chandler alleges that a correctional officer promised that he would speak to AHSA Sterling, and that AHSA Sterling participated in the committee that denied Chandler's MRI request. Chandler has not adduced facts showing that AHSA Sterling harbored any animus toward him or that he was actually aware of Chandler's lack of medical treatment. Deliberate indifference is a high standard, and even viewing the facts in

4

the light most favorable to Chandler, that standard has not been met with respect to AHSA Sterling.

**AFFIRMED in part and REVERSED in part.**

*Chandler v. Guttierrez*, No. 17-56402

BENNETT, Circuit Judge, dissenting in part:

I agree with all but one of the majority's holdings: that Warden Guttierrez is not entitled to qualified immunity. The majority relies on *Jett v. Penner*, 439 F.3d 1091, 1098 (9th Cir. 2006) for the proposition that a reasonable jury could find that Warden Guttierrez violated Chandler's constitutional rights. Even assuming a reasonable jury could make that finding, however, I do not believe that the rights Warden Guttierrez supposedly violated were clearly established at the time of the alleged violation. I therefore respectfully dissent from the majority's holding that Warden Guttierrez is not entitled to qualified immunity.

\*        \*        \*

Our review is limited to the "purely legal question" of whether Warden Guttierrez's alleged conduct violated Chandler's clearly established constitutional rights. *Cunningham v. City of Wenatchee*, 345 F.3d 802, 807 (9th Cir. 2003).

A.    **Warden Guttierrez's alleged conduct**

Warden Guttierrez's alleged conduct is as follows. First, Chandler alleges that, at 11:00 AM on April 12, 2012, Chandler's cellmate Mark Hanes approached Warden Guttierrez and other prison staff in the inmate dining hall. Hanes

1

allegedly "informed them of Mr. Chandler's problem."[1]  Hanes was allegedly told

that Chandler would "be seen by medical."  By 2:00 PM, no one had arrived at

Chandler's cell, so Hanes pressed an emergency button that alerted prison staff,

who in turn notified medical personnel.  A physician's assistant arrived at

Chandler's cell forty-five minutes later.

Second, Chandler alleges that, on April 18, 2012, Hanes spoke to Warden

Guttierrez and a Correctional Lieutenant, and that the Lieutenant said that he had

"reported it" to another lieutenant.[2]

Third, Chandler's parents contacted their Congressman about Chandler's

medical condition.  That Congressman apparently contacted Warden Guttierrez,

and, in response, Warden Guttierrez assured the Congressman that Chandler was

receiving appropriate medical care.  Warden Guttierrez also told the Congressman

that Chandler was uncooperative during medical examinations and non-compliant

with some of his treatments.

Fourth, Warden Guttierrez signed two responses to Chandler's requests for

administrative remedies.  The first request was not related to Chandler's

backpain—it related to Chandler's allegation that a prison staff member released

---

[1] Hanes neither recounted nor recorded any additional details about what he said during this interaction.

[2] Again, there are no additional details as to this interaction.

2

Chandler's medical information to his father without permission. Warden Guttierrez's response stated that the prison "takes allegations of staff misconduct seriously," and that Chandler's allegations would be reviewed. The second request related to Chandler's backpain and included a request to have food and medication brought to his cell. That request was denied based on prison security and sanitation policies, as well as the medical care and evaluations Chandler had already received from medical personnel.

## B. Chandler's clearly established constitutional rights

The Supreme Court has "repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1775–76 (2015). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011)). As the "Court explained decades ago, the clearly established law must be 'particularized' to the facts of the case. Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (alteration in original) (citation omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Court does "not require a case directly

3

on point, but existing precedent must have placed the statutory or constitutional question *beyond debate*." *al–Kidd*, 563 U.S. at 741 (emphasis added).

The majority cites *Jett v. Penner*, 439 F.3d at 1098—a single, inapposite Ninth Circuit case—for the proposition that Warden Guttierrez is not entitled to qualified immunity. But "even if a controlling circuit precedent could constitute clearly established law in these circumstances, it does not do so here." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quoting *Sheehan*, 135 S. Ct. at 1776).

In *Jett*, a prisoner (Jett) fell off his bed and fractured his thumb. *Jett*, 439 F.3d at 1094. Because Jett injured himself on a Saturday, prison staff took him to a private emergency room, where a doctor gave him a temporary splint and told him to see a specialist early the following week. *Id.* Nineteen months passed before Jett finally saw a specialist—despite his notifying medical staff of his pain, submitting medical slips, sending letters to prison doctors, filing a formal grievance, and (as relevant here) sending the prison warden a letter four months after he fractured his thumb and fifteen months before he finally saw a specialist. *Id.* at 1094–95.

We held that Jett had presented sufficient evidence to raise a triable issue of fact as to whether the warden was deliberately indifferent to Jett's medical need, based on Jett's allegation that he personally sent a letter to the warden—which the warden allegedly ignored—fifteen months before Jett finally saw a specialist. *See*

4

*id.* at 1098. We noted that the warden would be liable for deliberate indifference if he "knowingly fail[ed] to respond to an *inmate's* requests for help." *Id.* (emphasis added).

**C. Analysis**

*Jett* did not place beyond debate the constitutionality of any of Warden Guttierrez's alleged conduct. First, it is not unconstitutional for a warden to defer to the judgment of healthcare professionals or rely on prison policy in denying a request for an administrative remedy. *See, e.g.*, *Peralta v. Dillard*, 744 F.3d 1076, 1086–87 (9th Cir. 2014); *McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013). Chandler does not argue otherwise.

In addition, Chandler received medical care less than three hours after the very first conversation that Hanes allegedly had with Warden Guttierrez. Nothing in *Jett*, a case in which the warden allegedly completely ignored a prisoner's letter, remotely establishes that a warden must respond to a secondhand report of a prisoner's medical needs within three hours.

What's more, Chandler does not allege that he ever attempted to contact Warden Guttierrez directly, by letter or otherwise. And, in my view, a single case with a single sentence saying that wardens are liable for "knowingly fail[ing] to respond to an *inmate's* requests for help," *Jett*, 439 F.3d at 1098 (emphasis added),

5

does not place beyond debate that a warden will be similarly liable for failing to respond to *secondhand* reports of a third-party inmate's problems.

Responding to firsthand prisoner requests and responding to secondhand reports of third-party prisoner requests are not the same "particular conduct." *See Mullenix*, 136 S. Ct. at 308. The difference between firsthand and secondhand communication is important, especially in the prison context. Wardens oversee entire prison populations and staff, and they shouldn't be expected to react the same to a direct complaint as opposed to a report of a problem from a third party. And even if that is untrue (i.e., even if wardens *should* be expected to react the same), neither the Supreme Court nor this court has ever said so. Similarly, because wardens are not doctors, they must rely on medical professionals to oversee the health of prisoners. *See Peralta*, 744 F.3d at 1086.

Chandler does not dispute that Warden Guttierrez made himself available at the prison dining facility during lunchtime, Monday through Friday, so that "any inmate" who wanted to speak to him about "any topic" could do so. Nor does Chandler dispute that, on a typical day, thirty to forty inmates waited in line to speak to Warden Guttierrez at lunchtime. That is likely between 150 and 200 conversations in an average week, and likely more than 7,000 conversations in an average year—at lunchtime alone.

6

Under the majority's holding, each prisoner, during each conversation, can request help for medical issues on behalf of not only himself but also any other prisoner or prisoners, and a warden must—*as a matter of constitutional law*—follow up with each secondhand request or else risk potential personal monetary liability. No case clearly establishes this.

The majority's holding also seems counterproductive. In-person lunchtime communication between wardens and prisoners decreases the probability that prisoners' requests for help will be accidentally overlooked or intentionally ignored. That is a good thing. But the majority's holding, by expanding the kinds of communications that could subject wardens to personal liability, could decrease such communications and thus work at cross purposes to the interests served by such communications.

Even assuming the Congressman's letter is relevant to the legal analysis in this case, whereas the warden in *Jett* was alleged to have ignored the prisoner's letter, here Warden Guttierrez did not ignore the Congressman but in fact contacted the Congressman and reassured him that, based on the reports of prison medical professionals, Chandler was receiving proper medical care. Even if we could somehow extend the *Jett* holding to a Congressman's thirdhand report of a prisoner's medical needs—and I do not think that we can—Warden Guttierrez did not ignore that communication.

7

Thus, the holding of *Jett* does not apply to the Warden's alleged conduct in this case, even when viewed in the light most favorable to Chandler. The majority's holding to the contrary defines whatever right we clearly established in *Jett* at far too high a level of generality. *See Sheehan*, 135 S. Ct. at 1775–76.

I respectfully dissent.