**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 14 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| TDN MONEY SYSTEMS, INC., | No. 18-15022 |
| Plaintiff-Appellant, | D.C. No. 2:15-cv-02197-JCM-NJK |
| v. | |
| EVERI PAYMENTS, INC., FKA Global Cash Access, Inc., | MEMORANDUM* |
| Defendant-Appellee. | |

| | |
|---|---|
| TDN MONEY SYSTEMS, INC., | No. 18-16727 |
| Plaintiff-Appellee, | D.C. No. 2:15-cv-02197-JCM-NJK |
| v. | |
| EVERI PAYMENTS, INC., FKA Global Cash Access, Inc., | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Nevada
James C. Mahan, District Judge, Presiding

Argued and Submitted October 24, 2019
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: CALLAHAN, OWENS, and R. NELSON, Circuit Judges.

Plaintiff-Appellant, TDN Money Systems, Inc. ("TDN") seeks reversal of an adverse jury verdict based on alleged errors in the district court's treatment of a perpetuity clause in a contract TDN had with Defendant-Appellee Everi Payments, Inc., f/k/a Global Cash Access, Inc. ("GCA"). On cross-appeal, GCA seeks reversal of the district court's denial of attorneys' fees and costs. We have jurisdiction under 28 U.S.C. §§ 1291 and 1294(1), and we affirm.[1]

This case concerns: (1) two CEO friends in the casino business; (2) two contracts the CEO friends entered into, three years apart, to govern their companies' business relationship; (3) a critical difference between those two contracts; (4) a dispute arising from that critical difference *after* one friend sold his company to a bigger company (GCA); (5) the district court's treatment of that critical difference at summary judgment and later at trial, where the jury entered a general verdict in favor of GCA; and (6) despite that verdict, the district court's denial of attorneys' fees and costs to GCA, the prevailing party.

We review each of the issues TDN raises for abuse of discretion and reverse the jury's verdict only if the district court's exercise of discretion is both erroneous and prejudicial. *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1065 (9th

---

[1] Because the parties are familiar with the facts of this case, we do not discuss them at length here.

2

Cir. 2017) (district court's evidentiary rulings and its decisions regarding the preclusive effect of a pretrial order); *Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) (en banc) (district court's reconsideration of summary judgment ruling); *Dang v. Cross*, 422 F.3d 800, 804-05 (9th Cir. 2005) (district court's formulation of jury instructions in a civil case where there is no allegation that the instructions misstated the law). We review the district court's denial of attorneys' fees and costs for abuse of discretion. *Williams v. Gaye*, 895 F.3d 1106, 1132-33 (9th Cir. 2018).

1.  We reject TDN's argument that the district court committed reversible error by allowing GCA to focus on a mistake theory that was not in the pretrial order or GCA's answer. Pretrial orders are construed liberally to permit any issues at trial that are embraced within their language, and a district court's decision regarding the preclusive effect of a pretrial order on issues of law and fact at trial will not be disturbed absent a clear abuse of discretion. *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 368 (9th Cir. 1985) (discussing Fed. R. Civ. P. 16(e)). A primary purpose of pretrial orders is to prevent unfair surprise by providing "fair notice" and "a fair opportunity to present evidence refuting" the opposing party's theories of liability or non-liability. *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 842-44 (9th Cir. 2001).

Here, unlike in *United States v. First Nat'l Bank of Circle*, 652 F.2d 882 (9th Cir. 1981), there was neither a substantial departure from the pretrial order nor any unfair surprise, as: (1) TDN itself raised the issue of whether Section 16 of the agreement was intentional (i.e., not mistaken) in its complaint; (2) this issue was reflected throughout the parties' pretrial motions, pleadings, trial briefs, and the joint pretrial order; (3) TDN's CEO essentially conceded that Section 16 was a mistake in the course of pretrial litigation; (4) GCA expressly alleged Section 16 was a mistake in its trial brief; (5) during opening statements, TDN said the evidence would show that the plain language of the agreement "does not reflect the actual understanding of the parties contractually"; and (6) it was TDN's *own witness* who testified that Section 16 was a mistake. Accordingly, the district court was not required to amend the pretrial order or examine the factors for doing so.

Regardless, there was no prejudice because: (1) TDN had a fair opportunity to present evidence refuting the notion that Section 16 was a mistake; (2) TDN consented to the district court's proposed jury instruction on ambiguous contract interpretation; (3) the district court sustained TDN's objection to GCA's proposed jury instruction on the affirmative defense of mistake; and (4) under the dealer resale agreement, GCA had the right to compete with TDN via direct sales in TDN's non-exclusive territory.

2.      We also reject TDN's claim that the district court erroneously

4

reconsidered its partial summary judgment order without amending the pretrial order or considering the factors for doing so. We have long held that the law-of-the-case doctrine does not prevent district courts from reconsidering pretrial orders, including summary judgment orders, at any time during trial. *See Peralta*, 744 F.3d at 1088; *City of Los Angeles v. Santa Monica Baykeeper*, 254 F.3d 882, 888 (9th Cir. 2001). TDN offers no support for its argument that the district court's broad authority to reconsider its pretrial ruling was constrained by Fed. R. Civ. P. 16 or this court's precedent concerning the preclusive effect of pretrial orders.

3. TDN has not shown that the district court unfairly prevented it from introducing evidence that GCA itself wrote Section 16 of the agreement. Both witnesses TDN sought to elicit this information from lacked personal knowledge of the documents TDN sought to introduce, and therefore the district court properly sustained objections to that testimony. *See* Fed. R. Evid. 602.

4. Finally, we reject TDN's argument that the district court's omission of GCA's proposed jury instruction on the meaning of Section 16 rendered the final jury instructions "an incomplete, and therefore incorrect, statement of the law." *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010). GCA's proposed jury instruction paraphrased the operative part—the second sentence—of Section 16, while omitting the first sentence that discussed the initial term of the agreement. Contrary to TDN's assertion, the proposed instruction did not state TDN's "theory

5

of the case." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Nor did it prevent TDN from arguing that the parties intended to be bound by Section 16 despite their failure to give notice of intent to renew in 2011, 2012, and 2013. Accordingly, the district court did not abuse its discretion by omitting the instruction and allowing the parties (and the jury) to focus on the plain language of the contract.

5. We also reject GCA's assertion that the district court erred in denying attorneys' fees and costs under Nevada's offer-of-judgment rule (Nev. R. Civ. P. 68), the parties' agreement, and Nevada's statutory scheme.

First, GCA has not shown that the district court misapplied Nevada's offer-of-judgment rule under the four-factor test set forth in *Beattie v. Thomas*, 668 P.2d 268, 274 (Nev. 1983). Nothing in the record persuades us that the district court's analysis of the first three *Beattie* factors (the so-called "good faith" factors) was mistaken, and we do not think that the district court "disregard[ed] guiding legal principles" when it concluded that it could not analyze the fourth *Beattie* factor (the reasonableness of GCA's fee request) because GCA failed to break out its post-offer costs and attorneys' fees. *Flamingo Realty, Inc. v. Midwest Dev., Inc.*, 879 P.2d 69, 74 (Nev. 1994). On appeal, GCA claims for the first time that its cost breakdown shows a total of $306,852.50 in post-offer fees and $26,886.07 in post-offer costs. But these figures were not in its motion or reply before the district

6

court, and even now GCA justifies these costs by citing 120 pages from the excerpts of record containing numerous invoices relating to *pre*-offer fees and costs. *See* LR 54-14(b)(1)-(2) (requiring "[a]n itemization of all costs sought to be charged as part of the fee award"). GCA points to no rule, statute, or case requiring a court to sift through hundreds of pages of invoices and make an independent determination of how much a prevailing party reasonably *should have* asked for under Fed. R. Civ. P. 54(d).

Second, we agree with the district court that the plain language of the dispute resolution clause only contemplated fees and costs following a final decision in arbitration, and here that necessary precondition never occurred. We also agree that the joint stipulation only provided that "[n]o party is waiving any arguments or defenses on the merits," and we are aware of no controlling precedent that says such language encompasses post-merits fees and costs awards.

Finally, GCA waived its argument that it is entitled to nontaxable costs under Nevada's statutory scheme by failing to comply with the filing timelines set forth in Rule 54(d) and Local Rules 54-1 and 54-12. *See Walker v. California*, 200 F.3d 624, 626 (9th Cir. 1999).

The jury's verdict in favor of GCA is **AFFIRMED**. The district court's denial of attorneys' fees and costs to GCA is **AFFIRMED**.