# United States Court of Appeals for the Federal Circuit

_____

**COLUMBIA SPORTSWEAR NORTH AMERICA, INC.,**

*Plaintiff-Appellant*

**v.**

**SEIRUS INNOVATIVE ACCESSORIES, INC.,**

*Defendant-Cross-Appellant*

_____

2021-2299, 2021-2338

_____

Appeals from the United States District Court for the Southern District of California in No. 3:17-cv-01781-HZ, Judge Marco A. Hernandez.

_____

Decided:  September 15, 2023

_____

NICHOLAS FREMONT ALDRICH, JR., Schwabe, Williamson & Wyatt P.C., Portland, OR, argued for plaintiff-appellant.  Also represented by SCOTT D. EADS, SARA KOBAK. Also argued by CHRISTOPHER V. CARANI, McAndrews, Held & Malloy, Ltd., Chicago, IL.

SETH MCCARTHY SPROUL, Fish & Richardson, P.C., San Diego, CA, argued for defendant-cross-appellant.  Also represented by CHRISTOPHER MARCHESE, JOHN WINSTON THORNBURGH.

_____

Before PROST, REYNA, and HUGHES, *Circuit Judges.*

PROST, *Circuit Judge.*

Columbia Sportswear North America, Inc. ("Columbia") sued Seirus Innovative Accessories, Inc. ("Seirus") for infringing U.S. Design Patent No. D657,093 ("the D'093 patent"). After the district court granted summary judgment of infringement and a jury awarded Columbia $3,018,174 in damages, Seirus appealed to this court. In *Columbia I*,[1] we vacated the summary judgment of infringement and remanded for further proceedings.

On remand, a jury found that Seirus did not infringe. Columbia appeals, mainly challenging the jury instructions. Seirus conditionally cross-appeals as to damages. For the reasons discussed below, we vacate the non-infringement judgment and remand for further proceedings.

BACKGROUND

I

Columbia's D'093 patent, titled "Heat Reflective Material," claims "[t]he ornamental design of a heat reflective material, as shown and described" in various figures. D'093 patent, at [54], [57]. Figure 1, described as "an elevational view of a heat reflective material," J.A. 4, is reproduced below:

---

[1]    *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d 1119 (Fed. Cir. 2019) ("*Columbia I*").

COLUMBIA SPORTSWEAR NORTH AMERICA, INC. v.          3
SEIRUS INNOVATIVE ACCESSORIES, INC.



J.A. 1704.

Seirus markets and sells products (e.g., gloves) made with material that it calls HeatWave. An image of Heat-Wave material appears below:



Cross-Appellant's Br. 17 (citing J.A. 3992).

## II

### A

Columbia sued Seirus in district court,[2] accusing Seirus of infringing the D'093 patent via its HeatWave products.

Columbia sought both a construction of the D'093 patent's claim and summary judgment of infringement. The district court declined to construe the claim but granted summary judgment of infringement all the same. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories*, 202 F. Supp. 3d 1186, 1189 (D. Or. 2016) ("*SJ Opinion*").

The district court's summary-judgment opinion began with the "ordinary observer" test for design-patent infringement, drawn from the Supreme Court's *Gorham* decision:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

---

[2]    Columbia sued in the U.S. District Court for the District of Oregon, which later transferred the case to the U.S. District Court for the Southern District of California, from which it came to this court on appeal in *Columbia I* and comes again to this court now. *See Columbia I*, 942 F.3d at 1124, 1132–33. Because the distinction is immaterial to our discussion, we refer to the two district courts interchangeably as the district court.

*SJ Opinion*, 202 F. Supp. 3d at 1190–91 (alteration in original) (quoting *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)).

The district court also addressed the topic of comparison prior art. In a design-patent infringement analysis, comparison prior art serves as background when comparing a claimed and accused design. *See id.* at 1195 (stating that the "ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art," and "when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer" (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676 (Fed. Cir. 2008) (en banc))).

The district court then discussed two issues relevant here. First, it rejected Seirus's argument that the Seirus logo appearing throughout the design of HeatWave material made that design different enough from the claimed design to preclude summary judgment of infringement. *Id.* at 1193–94. Indeed, relying on its interpretation of this court's precedent, the district court disregarded the Seirus logo altogether in its infringement analysis. *Id.* at 1193 (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed. Cir. 1993)). Second, the district court evaluated the comparison prior art that Seirus had offered in support of its non-infringement position. As to U.S. Patent Nos. 2,539,690 ("Boorn") and 1,515,792 ("Respess"), the district court found that they "cover[ed] products far afield" from the D'093 patent's heat reflective material and therefore were not relevant comparison prior art. *See id.* at 1196. As to U.S. Patent No. 5,626,949 ("Blauer"), however, the district court compared it side-by-side with both

the D'093 patent and the HeatWave material (as shown below, with Blauer listed as the '949 patent):

  

Columbia's D'093 patent          Seirus's HeatWave          '949 patent

*Id.* at 1197. The district court found that "the contrasting waves of Seirus's design are still substantially closer to the contrasting wave design disclosed in the D'093 patent than either Seirus's or Columbia's design is to the pattern disclosed in [Blauer]." *Id.* (finding that "[t]he waves in [Blauer] are not contrasting colors" and that "the waves in the Columbia and Seirus designs are very close to the same wavelength and amplitude"). In light of this evaluation, the district court found that "[t]he overall visual effect of the Columbia and Seirus designs [is] nearly identical." *Id.*

With infringement thus established, damages were tried to a jury, who awarded Columbia $3,018,174.

B

Seirus appealed the district court's summary judgment of infringement and the jury's damages award to this court. In *Columbia I*, we vacated the summary judgment, concluding that the district court erred in two respects.

First, the district court had improperly declined to consider the effect of Seirus's logo in its infringement analysis. *Columbia I*, 942 F.3d at 1130. We explained that, while a "would-be infringer should not escape liability for design patent infringement if a design is copied but labeled with its name," our precedent "does not prohibit the fact finder from *considering* an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one." *See id.*

at 1131 (emphasis in original).  Second, the district court had resolved certain fact issues that should have been left to a jury.  Among these issues was the impact of Seirus's comparison prior art.  In particular, after we described the district court's three-way comparison of the D'093 patent, the Seirus HeatWave material, and Blauer—as well as the court's resulting finding that "[t]he overall visual effect of the Columbia and Seirus designs [is] nearly identical"—we concluded that this factfinding was improper on summary judgment.  *Id.* (first alteration in original) (quoting *SJ Opinion*, 202 F. Supp. 3d at 1197).

We therefore vacated the summary judgment and re-manded for further proceedings.  Although we noted Seirus's separate arguments concerning damages, we "d[id] not reach them because we ha[d] vacated the in-fringement finding." *Id.* at 1132.

## III

Infringement was then tried to a jury.  Three aspects of that trial are relevant here: (1) the comparison prior art (and related arguments), (2) the jury instructions on comparison prior art, and (3) the jury instructions implicating the Seirus logo.  We discuss each in turn.

## A

Before trial, the district court limited admissible comparison prior art to "wave patterns on *fabric*."  J.A. 421 (emphasis added).  In light of this ruling, Seirus presented to the jury Boorn, Respess, and Blauer as alleged compari-son prior art.

Boorn is a 1951 utility patent that discloses a method of inlaying plastic threads into plastic sheets.  In particu-lar, it says that prior-art methods of simply painting, stamping, or printing ornamental stripes on the surface of a coated fabric or a plastic sheet produce stripes that are "likely to wear off readily," and it seeks to overcome that problem by "forcing into such surface preformed plastic

threads or ribbons to thereby embed them in the surface of the plastic material and form the desired inlaid striped design." J.A. 1465 col. 1 ll. 1–19.

Respess is a 1924 utility patent that discloses a "process of making a strong pliable unwoven fabric." *See* J.A. 1468 col. 1 ll. 13–14. One of the objects of the invention is to make such a fabric so that it "may readily be formed around the core in making a rubber tire and similar articles." J.A. 1468 col. 1 ll. 22–29.

Blauer is a 1997 utility patent titled "Breathable Shell for Outerwear." J.A. 1457. It describes its "Field of the Invention" as "relat[ing] to fabric constructions for outerwear, and, more particularly, to shell fabric constructions for coats, pants, jackets, boots, gloves, and other outer clothing that are designed for protection against inclement weather." J.A. 1460 col. 1 ll. 10–15. Its outerwear shell seeks to achieve "vapor permeability, water repellency, wind obstruction, stain resistance, dimensional stability, and external durability." J.A. 1460 col. 2 ll. 1–8.

The district court, in addition to admitting these references because they disclosed fabric, precluded Columbia from trying to distinguish them as not disclosing *heat reflective material*. The district court reasoned that allowing Columbia to do so (e.g., by argument or witness questioning) would improperly import functional considerations into the design-patent infringement analysis. *See* J.A. 421.

B

Columbia proposed two jury instructions addressing the proper scope of comparison prior art. Proposed jury instruction no. 9E (titled "Claim Scope") stated that "[t]he [D'093 patent] is limited to the design of heat reflective materials, as shown and described in the patent," and that "[t]he plain and ordinary meaning of 'heat reflective materials' in the context of the [D'093 patent] does not include all materials." J.A. 360 (capitalization normalized).

Proposed jury instruction no. 9F (titled "What is Prior Art") stated:

> In design patent law, the term "prior art" refers to prior designs that address the same subject matter or field of endeavor as the patented design or that address a field of endeavor so similar that a designer having ordinary skill would look to articles in that field for their designs. The subject matter and field of endeavor of the D'093 patent is ornamental designs for heat reflective materials.

J.A. 369 (capitalization normalized).

During trial, the district court gave the parties a draft of its jury instructions. Columbia took issue with the district court's draft instruction no. 11, which concerned comparison prior art. Columbia argued that (1) the scope of comparison prior art "is not the universe of abstract design but is limited to designs of the same article of manufacture or of articles so similar that a person of ordinary skill would look to such articles for their designs," and (2) at the very least, the jury (as fact finder) should get to decide for themselves whether Boorn, Respess, and Blauer were within the proper scope. *See* J.A. 1172–73 (cleaned up). The district court then invited the parties to propose revisions to its draft jury instructions. J.A. 1185. Columbia proposed including a sentence in draft instruction no. 11 stating: "The term 'prior art' refers to prior designs of the same article of manufacture or of articles so similar that a person of ordinary skill would look to such articles for their designs." J.A. 1481.

The district court declined to include Columbia's proposed sentence and gave instruction no. 11 (in relevant part) to the jury as follows:

> You must decide what is prior art. Prior art includes things that were publicly known, or used in a publicly accessible way in this country, or that

10        COLUMBIA SPORTSWEAR NORTH AMERICA, INC. v.
                SEIRUS INNOVATIVE ACCESSORIES, INC.

were patented or described in a publication in any country before the creation of the claimed design.

You must familiarize yourself with the prior art in determining whether there has been infringement. When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same.

J.A. 1521.

Thus, aside from publication and date requirements—matters undisputed as to Boorn, Respess, and Blauer—the jury instructions provided no standard by which the jury should decide what is comparison prior art.

C

Columbia also proposed two jury instructions addressing Seirus's logo on the accused HeatWave design. Proposed jury instruction no. 9B (titled "Design Patent Infringement") stated that "[c]onfusion as to the source or provider of the goods accused of infringing is irrelevant to determining whether a patent is infringed." J.A. 348. Proposed jury instruction no. 9D (titled "Logo/Confusion") stated:

Labelling a product with source identification or branding does not avoid infringement. Consumer confusion as to the source or provider of the products is not a consideration in an infringement analysis. [B]ut you may consider an ornamental logo, its placement, and its appearance as one among other potential differences between a patented design and an accused one in deciding whether the overall appearance of the patented and accused design are substantially similar.

J.A. 356.

The district court's draft jury instructions did not include Columbia's proposals (at least not verbatim). *See* Appellant's Br. 37–38. Instead, draft instruction no. 10 did two basic things. First, it recited the ordinary-observer test: "Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive an ordinary observer, inducing him to purchase one supposing it to be the other." Appellant's Br. 38; *see Gorham*, 81 U.S. at 528. Second, it added: "You do not need, however, to find that any purchasers were actually deceived or confused by the appearance of the accused products." Appellant's Br. 38.

Columbia took issue with the district court's draft instruction no. 10, arguing that it should have added that the jury also need not find a *likelihood* of consumer confusion. J.A. 1159–60. Columbia proposed revising a sentence in the instruction to state: "You do not need, however, to find that any purchasers were actually deceived, nor do you need to find any actual confusion *or likelihood of confusion* amongst consumers in the marketplace." J.A. 1481 (emphasis added). The district court declined to include Columbia's proposed revision and instead gave instruction no. 10 (in relevant part) to the jury as follows:

> Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive an ordinary observer, inducing him to purchase one supposing it to be the other. You do not need, however, to find that any purchasers were actually deceived or confused by the appearance of the accused products.

J.A. 1520.

\*    \*    \*

The jury returned a verdict of non-infringement, and the district court accordingly entered judgment for Seirus. Columbia appeals, and Seirus conditionally cross-appeals as to damages. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Our discussion proceeds as follows. Part I addresses the parties' arguments concerning the preclusive effects of prior proceedings. Parts II.A and II.B address Columbia's jury-instruction and other challenges concerning comparison prior art and Seirus's logo. Part III addresses Seirus's conditional cross-appeal.

## I

The parties argue that prior proceedings through *Columbia I* create certain preclusive effects here. These effects take various labels. Both parties invoke law of the case, while Seirus adds judicial estoppel to the mix. We reject each of these contentions.

The law-of-the-case doctrine relies on the force of a matter having already been decided in the case. *See, e.g.*, *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (noting that the doctrine "expresses the practice of courts generally to refuse to reopen what has been decided" (cleaned up)). Columbia, citing the district court's previous exclusion of comparison prior art concerning products "far afield" from heat reflective material, argues that this ruling as to what qualifies as comparison prior art became the law of the case when Seirus failed to challenge it in *Columbia I*. Appellant's Br. 55–56 (citing *SJ Opinion*, 202 F. Supp. 3d at 1196 (excluding Boorn and Respess from consideration as comparison prior art)). Seirus does not dispute that it failed to challenge that particular ruling in

COLUMBIA SPORTSWEAR NORTH AMERICA, INC. v.            13
SEIRUS INNOVATIVE ACCESSORIES, INC.

*Columbia I*.[3]  Instead, it maintains that, because *Columbia I* vacated the summary judgment, that ruling cannot be relied upon as law of the case.  Cross-Appellant's Br. 48–49 (citing *Rumsfeld v. Freedom NY, Inc.*, 329 F.3d 1320, 1332 (Fed. Cir. 2003) ("[A] vacated judgment has no preclusive force . . . as a matter of the law of the case." (cleaned up))).

Columbia's argument, however, does not implicate law of the case so much as it does forfeiture[4]—a related, yet distinct, concept in this area.  *See, e.g.*, *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995) (noting

---

[3]    To be sure, Seirus challenged the district court's comparison of the claimed and accused designs with Blauer as resulting in factual determinations improperly made against it at summary judgment.  But it did not challenge how the district court decided *which* comparison prior art to consider in the first place.  Unsurprisingly, given Seirus's failure to raise that issue, *Columbia I* did not pass upon it.  That being so, Seirus's statements throughout its briefing that *Columbia I* reversed the district court on "exactly th[at] issue[]," Cross-Appellant's Br. 12—or that Columbia's position in this appeal regarding comparison prior art is "*directly contrary* to this [c]ourt's decision in *Columbia I*," *id.* at 38, 42 (emphasis added)—are inaccurate (at best).

[4]    Although Columbia's briefing and several authorities on this issue use the term "waiver," we believe "forfeiture" is more accurate.  *See* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478.6, pp. 786, 791–92 (3d ed. 2019) (observing in this area that, "[a]lthough forfeiture would be a more suitable expression," that term "is not always used; waiver often takes its place"); *see also In re Google Tech. Holdings LLC*, 980 F.3d 858, 862–63 (Fed. Cir. 2020) (explaining that courts and litigants often use the term "waiver" when applying the doctrine of forfeiture).

that the bar on litigating issues "omitted from prior appeals" is "best understood as a species of waiver doctrine" and is "analytically distinct" from "law-of-the-case doctrine proper"); *id.* at 739–40; *see also* 18B Wright & Miller § 4478.6 (distinguishing between law of the case and forfeiture). The argument is that Seirus's *failure* to challenge the district court's scope-of-comparison-prior-art ruling in *Columbia I* cemented that ruling as, essentially, the law of the case. Viewed that way, it is unclear why our disposition in *Columbia I* would relieve Seirus of the consequences of its failure to challenge that particular ruling—at least given that, aside from recounting the ruling as background, *Columbia I*, 942 F.3d at 1130, our disposition neither addressed it nor necessarily disturbed it.

Still, whether to excuse a forfeiture is generally within our discretion. *See, e.g.*, *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1344 n.7 (Fed. Cir. 2022). And here, the circumstances counsel against letting Seirus's forfeiture dictate what qualifies as comparison prior art. Seirus's forfeiture could fairly cover only the district court's ruling as applied to Boorn and Respess (references the court excluded from consideration). The district court considered Blauer extensively, so Seirus had no occasion to challenge the ruling as applied to Blauer. *See United States v. Lee*, 358 F.3d 315, 324 (5th Cir. 2004) ("An issue is not waived if there was no reason to raise it in the initial appeal."). And, because Blauer persisted as potential comparison prior art in the infringement trial, Columbia's current appeal would in any event require us to articulate the proper scope of comparison prior art—an issue of first impression for this court. *See infra* Discussion Part II.A. Because we are just now articulating this scope, we deem it the better course to allow the parties and the district court to engage with it afresh—both as to Blauer and other references. *Cf. Crocker*, 49 F.3d at 740 (noting that an intervening change in the law will support departing from the "previously established law of the case" and that "[t]he

preclusive barrier of the waiver doctrine is even one notch weaker").

Seirus, for its part, likewise invokes law of the case, albeit likewise in a way that implicates forfeiture. According to Seirus, when Columbia failed to challenge (in *Columbia I*) the district court's decision not to construe the claim, it forfeited the ability to seek a claim construction—thus cementing a non-construction as the law of the case and barring Columbia from arguing about what a heat reflective material is. *See* Cross-Appellant's Br. 47–48 (arguing that Columbia's proposed jury instruction—that heat reflective materials not mean *all* materials—is improper due to that alleged forfeiture).

We reject Seirus's argument. Insofar as *Columbia I* concerned the D'093 patent,[5] Columbia came to this court as the appellee, having *prevailed* on infringement. We therefore do not see—nor has Seirus supplied—any reason why Columbia should have quibbled with the district court's decision not to construe the claim. *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 954 (Fed. Cir. 1997) (distinguishing between applying "waiver" as against a prior appellant and appellee and noting that the issue was "not what [appellee] *could* supposedly have argued [in the prior appeal], but rather what it was *required* to argue, or indeed could *properly* have argued" (emphasis in original)); *see also Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) ("[A]ny forfeiture from failure to raise an issue in an initial appeal is far from absolute, especially where . . . the party failing to present the issue was the appellee, defending on a field of battle defined by the appellant."). Accordingly, there was no forfeiture here, and therefore nothing amounting to a "law of the

---

[5]    *Columbia I* also concerned a Columbia utility patent that is no longer at issue.

case" foreclosing a claim construction or related arguments.

Finally, Seirus argues that Columbia should be judicially estopped from maintaining that the relevant article of manufacture—for purposes of infringement-related comparison prior art—is heat reflective material. *See* Cross-Appellant's Br. 47. Seirus argues that such a position would be inconsistent with Columbia's position at the damages trial that the relevant "article of manufacture"—for purposes of calculating damages under 35 U.S.C. § 289—is an *entire* end product (e.g., gloves with portions not made of HeatWave material).

We disagree that judicial estoppel is appropriate here. Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (cleaned up). Factors that typically inform whether to apply the doctrine include: (1) whether a party's earlier and later positions are "clearly inconsistent"; (2) whether the party "succeeded in persuading a court to accept" the earlier position; and (3) whether the party would "derive an unfair advantage or impose an unfair detriment" on the opposing party if not estopped. *Id.* at 750–51 (cleaned up). Setting aside whether Columbia's positions are "clearly inconsistent"—an issue we do not reach in this case, *cf. infra* Discussion Part III (declining to reach Seirus's damages issues on the merits)—judicial estoppel is an equitable doctrine. And we see no equity in letting a position Columbia took while securing a (currently inapplicable) damages award impede its efforts to secure infringement liability—and thus damages—*at all*. Any incompatibility between a determination of infringement and the previously determined damages award may be addressed, if at all, if Columbia prevails on infringement.

COLUMBIA SPORTSWEAR NORTH AMERICA, INC. v.                    17
SEIRUS INNOVATIVE ACCESSORIES, INC.

## II

We turn now to Columbia's challenges to (1) the jury instructions (and exclusion of evidence and argument) concerning comparison prior art and (2) the jury instructions implicating Seirus's logo.

The parties agree that we should review Columbia's jury-instruction challenges under the law of the regional circuit—here, the Ninth Circuit. Appellant's Br. 46 (citing *Voda v. Cordis Corp.*, 536 F.3d 1311, 1328 (Fed. Cir. 2008)); Cross-Appellant's Br. 40 (same). We also applied Ninth Circuit law in reviewing a jury-instruction challenge in *Columbia I*. 942 F.3d at 1127–28. We do so again here. That means we "review de novo whether an instruction states the law correctly" and review for abuse of discretion "a district court's formulation of civil jury instructions." *Peralta v. Dillard*, 744 F.3d 1076, 1082 (9th Cir. 2014) (en banc); *id.* (noting further that jury instructions must "fairly and adequately cover the issues presented, correctly state the law, and not be misleading"); *see also Gantt v. City of L.A.*, 717 F.3d 702, 706 (9th Cir. 2013) ("Incomplete instructions are treated as legal errors and reviewed de novo as well.").[6]

---

[6]    We acknowledge precedent "apply[ing] Federal Circuit law to review the legal sufficiency of jury instructions on an issue of patent law without deference to the district court." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (cleaned up); *see id.* at 1378 & n.4 (asking whether instructions were "incomplete as given" and whether they "correctly state[d] an issue of patent law" (cleaned up)); *see also DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (en banc in relevant part) ("This [c]ourt . . . only orders a new trial when errors in the instructions as a whole clearly mislead the jury." (cleaned up)). Ultimately, which standard—the Ninth Circuit's or ours—governs here is immaterial

We review the district court's exclusion of evidence or argument at trial under the law of the regional circuit. *See Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1372 (Fed. Cir. 2011). The Ninth Circuit reviews such rulings for abuse of discretion. *See Wagner v. Cnty. of Maricopa*, 747 F.3d 1048, 1052 (9th Cir. 2013) (evidence); *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1137 (9th Cir. 2011) (argument).

We first address the comparison-prior-art issues, then the logo issues.

## A

## 1

We begin with the purpose of comparison prior art in a design-patent infringement analysis.[7]

Before our en banc opinion in *Egyptian Goddess*, design-patent infringement required satisfying two separate tests. One was the ordinary-observer test. *Egyptian Goddess*, 543 F.3d at 670–72 (citing *Gorham*, 81 U.S. at 528). The other was the "point of novelty" test, which asked whether the similarity between the claimed and accused designs was attributable to the novelty that distinguished

---

because our conclusions would be the same under either standard. *See ADASA Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 914 (Fed. Cir. 2022) (declining to resolve which standard of review for jury instructions applies when either would produce the same result).

[7]    Using prior art in an infringement analysis is, by and large, peculiar to design-patent law. In analyzing infringement of a *utility* patent (which is the type of patent we usually consider), the task generally consists of simply comparing the properly construed patent claim to the accused product or method. *See, e.g.*, *Philip Morris Prods. S.A. v. ITC*, 63 F.4th 1328, 1348 (Fed. Cir. 2023).

the claimed design from the prior art. *Id.* at 670–72, 675–76 (discussing *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423 (Fed. Cir. 1984)); *see Winner Int'l Corp. v. Wolo Mfg. Corp.*, 905 F.2d 375, 376 (Fed. Cir. 1990) (describing this test's purpose as focusing on aspects of a design that render it different from the prior art).

In *Egyptian Goddess*, we eliminated the point-of-novelty test as a separate test and held that the ordinary-observer test is the sole test for design-patent infringement. 543 F.3d at 678. In doing so, however, we retained a role for prior art in cases where "the claimed and accused designs are not plainly dissimilar." *Id.*; *accord Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015). Specifically, we explained that in such cases the ordinary-observer test should be applied with reference to prior-art designs, because those designs can inform the perspective of the hypothetical ordinary observer:

> Particularly in close cases, it can be difficult to answer the question whether one thing is like another without being given a frame of reference. The context in which the claimed and accused designs are compared, i.e., the background prior art, provides such a frame of reference and is therefore often useful in the process of comparison. Where the frame of reference consists of numerous similar prior art designs, those designs can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer.

*Egyptian Goddess*, 543 F.3d at 676–77; *see Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) (noting that *Egyptian Goddess* "refined the ordinary observer test" by incorporating the context of the prior art).

Comparison prior art can help highlight distinctions between the claimed and accused designs because

> [w]hen the differences between [those] design[s]
> are viewed in light of the prior art, the attention of
> the hypothetical ordinary observer will be drawn to
> those aspects of the claimed design that differ from
> the prior art. And when the claimed design is close
> to the prior art designs, small differences between
> the accused design and the claimed design are
> likely to be important to the eye of the hypothetical
> ordinary observer.

*Egyptian Goddess*, 543 F.3d at 676. But such art can also cut the other way—i.e., it can highlight *similarities* between the claimed and accused designs. As we explained:

> If the accused design has copied a particular fea-
> ture of the claimed design that departs conspicu-
> ously from the prior art, the accused design is
> naturally more likely to be regarded as deceptively
> similar to the claimed design, and thus infringing.

*Id.* at 677.

2

As Columbia notes, the proper scope of comparison prior art that may be used in an infringement analysis is an issue of first impression for this court.

Columbia correctly states that a design-patent claim's scope is limited to the article of manufacture identified in the claim (which here is heat reflective material), and it argues that the scope of comparison prior art should be likewise limited. Appellant's Br. 42, 49 (citing *In re Surgisil, L.L.P.*, 14 F.4th 1380, 1382 (Fed. Cir. 2021)). Seirus, though quick to say "that is not the law," Cross-Appellant's Br. 46, does not meaningfully dispute that this is an open question of law. And, outside of a passing remark that comparison prior art must be "close," *id.*, Seirus does not develop a relevant argument as to what the scope should be. In any event, we agree with Columbia.

We have held that, for a prior-art design to anticipate, it must be applied to the article of manufacture identified in the claim. *Surgisil*, 14 F.4th at 1382 (claim scope limited to a lip implant; designs applied to other articles—there, an art tool—could not anticipate). We have also held that, for an accused design to infringe, it must be applied to the article of manufacture identified in the claim. *See Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1336, 1340, 1343 (Fed. Cir. 2019) (claim scope limited to a chair; design applied to a basket could not infringe); *see also Int'l Seaway*, 589 F.3d at 1240 (holding that the same test applies as between design-patent infringement and anticipation). We conclude that this requirement also applies to comparison prior art used in an infringement analysis. That is, to qualify as comparison prior art, the prior-art design must be applied to the article of manufacture identified in the claim.

We apply this requirement to comparison prior art for a few reasons. First, doing so best accords with comparison prior art's purpose. In an infringement analysis, that purpose is to help inform an ordinary observer's comparison between the claimed and accused designs—designs that, necessarily, must be applied to the same article of manufacture. Naturally, prior-art designs will help in that comparison only to the extent that they too are applied to that article of manufacture.

Second, although the proper scope of comparison prior-art designs has never been squarely at issue in our cases, requiring that such designs be applied to the article of manufacture identified in the claim conforms with many cases in which courts considered such designs—including the cases most instructive on the role of comparison prior art. For example, we have regarded the Supreme Court's *Whitman Saddle* case as foundational for using comparison prior art in an infringement analysis. *See Egyptian Goddess*, 543 F.3d at 672–74, 676 (recounting the history of this issue, beginning with *Smith v. Whitman Saddle Co.*,

148 U.S. 674 (1893)).  There, the patent covered the design of a saddle, and the comparison prior art consisted of saddles.  *See* 148 U.S. at 675–76, 680–82.  Likewise, in *Egyptian Goddess*, the patent covered the design of a nail buffer, and the comparison prior art consisted of nail buffers. 543 F.3d at 668, 680–82.  Similar examples abound.  *See, e.g., ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 937–38, 943 (Fed. Cir. 2022) (hoverboards vs. hoverboard); *Wallace v. Ideavillage Prods. Corp.*, 640 F. App'x 970, 971, 975–76 (Fed. Cir. 2016) (nonprecedential) (body-washing brush vs. body-washing brush); *Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1318, 1324–25 (Fed. Cir. 2007) (sprayer shroud vs. sprayer shrouds); *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 1313, 1324 (Fed. Cir. 1998) (vending machine for food vs. vending machines for food).[8]

---

[8]    Although neither party's briefing raised it as an issue, we recognize that, in *Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337 (Fed. Cir. 2020), we "[saw] no error" in the district court's rejection of the patentee's "attempt to distinguish its patent [covering a pencil-shaped chalk holder] from the prior art [e.g., pencils] by importing . . . 'the chalk holder function of its design' into the construction of the claim." *Id.* at 1342–43 (quoting *Lanard Toys Ltd. v. Toys "R" Us-Del., Inc.*, No. 3:15-cv-849, 2019 WL 1304290, at *13 (M.D. Fla. Mar. 21, 2019)).  Critically, however, the patentee there had not argued that pencil designs should not be considered as comparison prior art for the design of a pencil-shaped chalk holder—a point the district court repeatedly emphasized.  *Lanard*, 2019 WL 1304290, at *12 ("Although Lanard emphasizes throughout its briefing that the [patent] pertains to a chalk holder specifically, Lanard does not contend that pencils and pencil-shaped containers are not appropriately considered as prior art.");

Third, using the same scope for anticipatory prior art and comparison prior art makes good practical sense. This standard is already in the system. *Surgisil*, 14 F.4th at 1382. It is also easy to articulate and provides clear boundaries. *See Curver*, 938 F.3d at 1341 ("[T]ying the design pattern to a particular article provides more accurate and predictable notice about what is and is not protected by the design patent."). Further, close questions may arise as to the relationship between a given article of manufacture and what the claim identifies. Such questions could arise in the context of determining whether a prior-art design could anticipate or whether an accused design infringes. But such questions could just as easily arise in the context of establishing the comparison prior art itself—i.e., in setting the background for an infringement analysis. Using the same standard in each of these contexts allows litigants, courts, and the U.S. Patent and Trademark Office to benefit from guidance provided in any one of them.

In sum, we conclude for the foregoing reasons that, to qualify as comparison prior art, the prior-art design must be applied to the article of manufacture identified in the claim.

---

*id.* at *13 n.15 ("Lanard does not dispute that the [c]ourt can properly consider such objects in its analysis of the prior art."). Moreover, in the patentee's appeal to this court, the only developed argument in its opening brief concerning the district court's treatment of the prior art was that the district court had improperly revived the point-of-novelty test—an argument we separately rejected. *Lanard*, 958 F.3d at 1344; *see also* Opening Br. of Pl.-Appellant Lanard Toys Ltd. at 24–25, 43–46, *Lanard Toys Ltd. v. Dolgencorp LLC*, No. 19-1781 (Fed. Cir. July 17, 2019), ECF No. 20. We therefore do not regard *Lanard* as controlling on the proper scope of comparison prior art.

3

Returning now to the case at hand, Columbia argues that the district court erred by failing to instruct the jury as to the scope of the D'093 patent claim (design for a heat reflective material) and, relatedly, the proper scope of comparison prior art. We agree. That error might be characterized as a failure to "fairly and adequately cover the issues presented," *see Peralta*, 744 F.3d at 1082, or the giving of "[i]ncomplete instructions," *see Gantt*, 717 F.3d at 706. The problem was that, aside from the date and publication requirements for comparison prior art, the jury lacked the correct standard for determining whether an admitted reference qualified as such art. Whether a particular reference meets that standard for comparison prior art—i.e., whether it discloses a design applied to the article of manufacture identified in the claim—is a question of fact reserved for the fact finder (at least, where there could be reasonable disagreement on that fact question such that it has not been reduced to a question of law). *See, e.g.*, *ADASA*, 55 F.4th at 910 (noting in the utility-patent context that the "question of what a reference teaches and whether it describes every element of a claim is a question for the finder of fact" (cleaned up)). But the standard *itself* is legal. And the failure to provide it was error—albeit quite an understandable one, given that we have only now articulated the standard.

We are also persuaded by Columbia's showing on this record that this error was prejudicial, and we are unpersuaded by Seirus's attempt to show otherwise. *Compare* Appellant's Br. 60–62, *and* Appellant's Reply Br. 25, *with* Cross-Appellant's Br. 63–66. This prejudicial error warrants vacating the non-infringement judgment and remanding for further proceedings. *See, e.g.*, *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 869 (9th Cir. 2020).

COLUMBIA SPORTSWEAR NORTH AMERICA, INC. v.                25
SEIRUS INNOVATIVE ACCESSORIES, INC.

Columbia also argues that the district court abused its discretion in prohibiting Columbia from trying to distinguish Boorn, Respess, or Blauer as not disclosing designs applied to heat reflective material. More generally, Columbia argues that heat reflective material is a genuinely distinct article of manufacture and does not mean just *any* material. Seirus, however, maintains that permitting distinctions among materials (as articles of manufacture) based on whether they are heat reflective would improperly read a functional limitation into Columbia's design patent. *E.g.*, Cross-Appellant's Br. 38, 43–46. Without opining on what might qualify as a heat reflective material—a matter not currently before us—we may safely clear up Seirus's general misconception about the role of function in design patents.

It is true that valid design patents cannot be directed to designs that are primarily functional, as opposed to ornamental. *See, e.g.*, *Ethicon*, 796 F.3d at 1328. But it is also true that "design patents are granted only for a design *applied to an article of manufacture*." *Curver*, 938 F.3d at 1340 (emphasis added); *accord Surgisil*, 14 F.4th at 1382; *see also* 35 U.S.C. § 171 ("Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor . . . ."). And *articles of manufacture* have functions. *Ethicon*, 796 F.3d at 1328. An article's function "must not be confused with 'functionality' of the *design* of the article." *Hupp v. Siroflex of Am.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) (emphasis added). Concern with the latter is what has featured prominently in our case law. The idea is to preclude design-patent protection for something that, though purported to be an "ornamental" design, is really dictated by function. *See Ethicon*, 796 F.3d at 1328–30.

Here, the issue we are confronting is not whether the D'093 patent's *design* (e.g., a wavy pattern) is dictated by function. Rather, the issue is whether the claimed *article* to which that design is applied is the same as another

article.  A natural, relevant consideration for distinguishing one article from another involves looking to the articles' respective functions.  That is one way we could tell in *Surgisil* that an art tool was not a lip implant: one was "used for smoothing and blending large areas of pastel or charcoal"; the other was for implanting in a lip.  *See* 14 F.4th at 1381–82 (cleaned up).[9]  Even if the two *designs* in *Surgisil* might have looked similar in some respects, the art-tool design could not anticipate the lip-implant design because those designs were applied to different *articles*.  And we knew they were different articles at least in part because of their different functions.  But, aside from clarifying that referencing functionality to distinguish articles of manufacture is not categorically impermissible, we need not further address Columbia's argument that the district court abused its discretion in prohibiting Columbia from trying to make such distinctions, as we have already remanded for further proceedings based on the comparison-prior-art jury-instruction issue.

Columbia further asks us to direct that none of Boorn, Respess, and Blauer be considered as comparison prior art at any new trial.  This we decline to do in the first instance.  The main problem with Columbia's request is that its opening brief did not adequately preserve a challenge to the district court's admission of these references.  Instead, its

---

[9]    This is not to say that simply including some function with a claimed article's description (e.g., via naming or argument) will necessarily exclude articles from a design-patent claim's scope that would otherwise fall within it.  For example, we suspect that, if a design patent were somehow granted for a design applied to a "flower pot *for planting daisies*," designs applied to prior-art flower pots not so designated could still anticipate.  Including that additional function ("for planting daisies") would not necessarily render the *article* genuinely distinct from other flower pots.

COLUMBIA SPORTSWEAR NORTH AMERICA, INC. v.
SEIRUS INNOVATIVE ACCESSORIES, INC.

27

brief focused on the district court's jury instructions and prohibition of Columbia's attempt to distinguish the admitted references. *See, e.g.*, Appellant's Br. 2–4 (Statement of the Issues); *id.* at 41–44 (Summary of Argument); *see also* Oral Arg. at 10:16–11:00, 15:37–16:08, 18:03–19:28 (discussing the preservation issue).[10] That preservation shortcoming, along with the fact that the district court has not yet had a chance to engage with the standard we have articulated, counsels against granting Columbia's request.[11]

On remand, the district court will likely be confronted with questions implicating what qualifies as heat reflective material. Such questions could be difficult to answer without knowing what heat reflective material is. The district court may therefore wish to consider construing that term. The parties have at various points offered their view of what it means. Columbia has indicated it means "a material designed to reflect heat," *see* J.A. 6696 (Columbia's Opening *Markman* Brief), or "metallic foil on a base material to reflect heat," Appellant's Br. 63 (citing J.A. 617–18). Seirus, on the other hand, has indicated that heat reflective material means *any* material—on the theory that, as a matter of physics, *all* materials reflect heat to some extent. *See* Cross-Appellant's Br. 49 (citing J.A. 363). Without evaluating the merit of Seirus's position, we feel compelled to note that the accused design here is not applied to just

---

[10]    No. 21-2299, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2299_01122023.mp3.

[11]    Given the circumstances, however—including Columbia's other challenges concerning comparison prior art and the proper scope of such art being an issue of first impression—we do not think any forfeiture-based "law of the case" principles regarding Columbia's inadequate preservation of an appellate challenge to the district court's admission of these references should bar any effort by Columbia to secure their exclusion at any new trial.

*any* material.  It is instead applied to material (called Heat-Wave, of all things) that Seirus touts for its heat reflective qualities.  *See, e.g.*, J.A. 3834 (Seirus marketing materials describing HeatWave as "reflect[ing] radiated heat back for more warmth").  This might suggest that, at least in the minds of some, heat reflective material connotes something genuinely distinct from just any material.  But again, we leave it to the district court on remand to determine whether and to what extent the term needs construing.

B

We turn now to Columbia's jury-instruction challenges related to Seirus's logo.  Columbia challenges the district court's jury instructions as erroneous for not specifying (1) that consumer confusion as to source is irrelevant to design-patent infringement, or (2) that a jury need not find a likelihood of consumer confusion to find such infringement. Because Columbia's challenges implicate distinctions between trademark (including trade-dress) law on the one hand and design-patent law on the other, we briefly discuss the relevant legal principles applicable to each before considering those challenges.

1

Trademark and design-patent infringement differ as to the relevance of consumer confusion regarding a product's source.  Trademark infringement *requires* that consumers will likely be confused as to a product's source.[12]  *See, e.g.*, *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428

---

[12]   Although trademark infringement contemplates additional types of confusion, *see, e.g.*, J. Thomas McCarthy, 4 McCarthy on Trademarks and Unfair Competition §§ 23:5, 23:8, 24:6 (5th ed. 2023), for simplicity's sake—and because of the nature of Columbia's jury-instruction challenges—we refer specifically to confusion as to a product's source.

(2003) (noting that the Lanham Act "broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product"); *see also* 4 McCarthy § 23:1; 1 McCarthy § 8:1. For design-patent infringement, however, "[l]ikelihood of confusion as to the source of the goods is not a necessary or appropriate factor." *Unette Corp. v. Unit Pack Co.*, 785 F.2d 1026, 1029 (Fed. Cir. 1986); *see also Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 828 (Fed. Cir. 1992) (noting that, while "purchasers' likelihood of confusion as to the source of a good is a necessary factor for determining trademark and trade dress infringement," "a different quantum of proof applies to design patent infringement, which does not concern itself with the broad issue of consumer behavior in the marketplace").

Given this difference, applying a logo or other clear source identifier in conjunction with a product can create different effects as between trademark and design-patent infringement. For trademark infringement, a distinctive logo's application can, under some circumstances, be significant evidence that there will be no consumer confusion as to a product's source, and therefore no infringement. *See, e.g., Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 515 (6th Cir. 2013) ("[The accused infringer] has in fact scrupulously avoided such confusion by choosing a starkly different logo that it prominently displays on its [products] and on all its sales and marketing literature."); *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 204 (1st Cir. 1996) ("[W]e have recognized that in certain circumstances otherwise similar marks are not likely to be confused if they are used in conjunction with clearly displayed names, logos[,] or other source-identifying designations of the manufacturer." (collecting cases)); *see also Converse, Inc. v. ITC*, 909 F.3d 1110, 1124 (Fed. Cir. 2018) (noting, in a trade-dress case, that "we have not held that [brand-name] labeling is always legally sufficient to avoid

likelihood of confusion but rather that those labels may be highly probative evidence"); 4 McCarthy § 23:53.

Logos are analyzed somewhat differently in the design-patent context. Again, because design-patent infringement does not consider consumer confusion as to source, such infringement "is not avoided 'by labelling.'" *Columbia I*, 942 F.3d at 1131 (quoting *L.A. Gear*, 988 F.2d at 1126); *see also id.* ("A would-be infringer should not escape liability for design patent infringement if a design is copied but labeled with its name."). But logos are hardly irrelevant, either. As we explained in *Columbia I*, our precedent "does not prohibit the fact finder from *considering* an ornamental logo, its placement, and its appearance as one among other potential differences between" a claimed and accused design. *See id.* (emphasis in original). Indeed, it would be improper "to ignore elements of the accused design entirely, simply because those elements included the name of the [accused infringer]." *Id.*

The takeaway is: just because consumers might not be confused about an accused product's *source*, that alone would not preclude an ordinary observer from deeming the claimed and accused *designs* similar enough to constitute design-patent infringement. *See Braun*, 975 F.2d at 828 (discussing differences between trademark and design-patent infringement and noting that what matters for the latter is "that an ordinary observer would be deceived *by reason of an accused* [*product*]*'s ornamental design*" (emphasis added)). At the same time, however, just because a logo's potential to eliminate confusion as to *source* is irrelevant to design-patent infringement, its potential to render an accused *design* dissimilar to the patented one—maybe even enough to establish non-infringement as a matter of law—should not be discounted.

2

With these legal principles in mind, we consider Columbia's logo-related jury-instruction challenges.

Again, the district court's jury instruction on design-patent infringement did two basic things. First, it recited the ordinary-observer test for infringement—the very test we endorsed in *Columbia I* and have endorsed numerous times in the past. J.A. 1520; *see Columbia I*, 942 F.3d at 1129; *see also, e.g.*, *Egyptian Goddess*, 543 F.3d at 678 ("[I]n accordance with *Gorham* and subsequent decisions, we hold that the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed."). Second, it added that the jury did "not need, however, to find that any purchasers were actually deceived or confused by the appearance of the accused products." J.A. 1520.

Columbia insists that the district court erred by not going further—by not adding that consumer confusion as to source is irrelevant for design-patent infringement, or that *likelihood* of confusion (in addition to actual confusion) need not be found. We disagree. The district court gave the ordinary-observer test for design-patent infringement materially identically to how the Supreme Court and this court have stated it, and it added that actual confusion was not necessary to find design-patent infringement. These could hardly be called incorrect statements of law. And we are not convinced that the district court's decision not to include Columbia's requested additions or clarifications was an abuse of discretion or resulted in instructions that were misleading or incomplete.[13]

---

[13]   Indeed, although Columbia challenges the jury instructions, its real complaint seems to lie with the following statement Seirus made during closing:

Hard to imagine *with all those logos* that an ordinary    observer,    the    consumer,    would    be

That said, we are not insensitive to Columbia's over-arching concern. At a surface level, the ordinary-observer test could be read as evoking concepts of consumer confusion as to source, given that it asks whether the resemblance between two designs "is such as to deceive [an ordinary] observer, inducing him to purchase one supposing it to be the other," *Gorham*, 81 U.S. at 528. In design-patent-infringement cases involving logos, we appreciate the potential for a jury to be led astray and mistakenly conflate the significance of a logo's *source-identifying* function with whatever impact it might have on a comparison of the *designs*. But district courts are in the best position to decide whether and when to provide clarification in the course of conducting a trial. And here we see no legal error or abuse of discretion in the district court's jury instructions, which are the only subject of Columbia's challenge on this issue.

### III

We turn now to Seirus's conditional cross-appeal regarding damages.

Seirus argues that, for purposes of calculating damages under 35 U.S.C. § 289,[14] the relevant "article of

---

deceived . . . . I don't see how that's possible *because Seirus is telling the world this is ours*. This is ours.

Appellant's Br. 77 (emphasis and alterations supplied by Columbia) (quoting J.A. 1225–26). But, outside of using these statements to animate its challenges to the jury instructions, Columbia has not suggested that these statements themselves provide a basis for appellate relief.

[14] Section 289 provides (in relevant part):

Whoever during the term of a patent for a design, without license of the owner, (1) applies the

manufacture" is the HeatWave material—not the entire end product to which it is applied (e.g., gloves with portions not made of HeatWave material).   Cross-Appellant's Br. 66–67 (encouraging us to "streamline further proceedings" by so holding).   Seirus also argues that the district court erred by instructing the jury (at the damages trial) that *Seirus* bore the burden of proving that the article of manufacture for § 289 damages purposes is less than the entire end product.   According to Seirus, Columbia—as the patentee—bore the burden of proving what that article is. The parties further disagree as to whether any damages retrial on profit-disgorgement issues should be tried to a jury or the bench.

As we indicated in *Columbia I*, these are important issues.   *See* 942 F.3d at 1132.   But we did not reach them there because our disposition left the case with no infringement determination.   *See id.*   Because our disposition here likewise leaves the case without an infringement determination, we do not reach these issues.

CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.   For the foregoing reasons, we vacate the non-infringement judgment and remand for further proceedings.

---

> patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or (2) sells or exposes for sale any article of manufacture to which such design or colorable imitation has been applied shall be liable to the owner to the extent of his total profit, but not less than $250, recoverable in any United States district court having jurisdiction of the parties.

35 U.S.C. § 289.

## VACATED AND REMANDED

COSTS

Costs to Columbia.